IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUST BETWEEN FRIENDS FRANCHISE SYSTEM, INC., an Oklahoma corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMONE GIBSON ENTERPRISES, LLC;<br>SAMONE GIBSON; and<br>BRANDON GIBSON,<br><br>Defendants. | Case No. 23-CV-098-JFH-JFJ |

## OPINION AND ORDER

Before the Court is a motion for temporary restraining order and preliminary injunctive relief ("Motion") filed by Plaintiff Just Between Friends Franchise System, Inc. ("JBF"). Dkt. No. 3. For the reasons set forth below, the Motion is GRANTED. This temporary restraining order ("TRO") shall remain in full force and effect for fourteen (14) days unless otherwise dissolved by this Court or extended for good cause. A hearing is set for March 23, 2023 at 1:00 p.m. to hear evidence and argument as to whether the TRO should be converted into a preliminary injunction under applicable law.

## BACKGROUND

The Court draws the following facts from the record before it, which are undisputed for purposes of the Motion. JBF franchises businesses which host twice annual children's and maternity consignment pop-up sales. Dkt. No. 2 at 5. Between sales, franchisees engage in activities to obtain inventory to sell at the next event, to obtain consignors for the next event, and to advertise and promote themselves. *Id.* JBF owns three relevant trademarks registered on the Principal Register of the United States Patent and Trademark Office (the "JBF Marks"): "JUST

BETWEEN FRIENDS" with design, Registration No. 2,912,971 dated December 21, 2004; "BETWEEN FRIENDS" without design, Registration No. 3,866,423 dated October 10, 2010; and "JUST BETWEEN FRIENDS" without design, Registration No. 3,866,424 dated October 26, 2010.  *Id.* at 6.

In November 2016, JBF entered a franchise agreement with Defendants Samone Gibson and Samone Gibson Enterprises, LLC ("SGE") for territory described as South Broward County, Florida.[1] Dkt. No. 2-1.  Samone Gibson's husband, Defendant Brandon Gibson, executed an owners' guaranty agreeing "to be personally bound by, and personally liable for the breach of, each and every provision" of the franchise agreement.  *Id.* at 48-49.  In December 2018, JBF and SGE—acting through both Samone Gibson and Brandon Gibson—executed another franchise agreement for territory described as Greater Palm Beach, Florida.  Dkt. No. 2-2.  The Court will refer to Defendants SGE, Samone Gibson, and Brandon Gibson collectively as "the Gibsons." Numerous provisions of the franchise agreements reflect franchisees' non-ownership of and obligations related to the JBF Marks.  Non-exhaustive examples include:

- You may not develop, maintain or authorize any other webpage, Internet site or social networking site (including but not limited to Facebook, Instagram, Pinterest, and Twitter) that mentions or describes you or your JBF sale or displays any of the Marks without JBF's prior written permission . . . . In the event we authorize you to use the Marks in an online or social media forum, you agree that we will own any rights you have in the forum, and have administrative access to such forum and agree to provide JBF with all access, log-in and password information for such online and/or social media forums.  Dkt. No. 2-1 at 22.

- You may not develop, maintain, or authorize any other Internet site or social networking site (including but not limited to Facebook, Instagram, Pinterest and Twitter) that mentions or

---

[1] Samone Gibson is listed individually as the "Franchisee" on page one of the franchise agreement [Dkt. No. 2-1 at 6] but SGE is listed as the franchising entity at the end of the document [*id.* at 42].

2

- describes you or your Center or displays any of the Marks without JBF's prior written approval. *Id.* at 23.

- You acknowledge and agree that all your usage of the Marks and any goodwill established by your use will inure to JBF's benefit exclusively, and that this Agreement does not confer any goodwill or other interests in the Marks or Trade Dress on you . . . . *Id.* at 24.

- Should we grant you written authorization to use the Marks in a form of electronic media, you agree that we will have control over the content associated with the Marks, administrative access to all such electronic media accounts, and log-in information and passwords to all such accounts. You may not use any Mark or any commercial symbol similar to the Marks, in connection with the performance or sale of any unauthorized services or products or in any other manner JBF has not expressly authorized in writing. *Id.* at 25.

- Franchisee agrees to use the Marks solely in connection with the Franchise and solely in the sale of products and services approved by JBF . . . . Franchisee agrees not to use the name "JUST BETWEEN FRIENDS" or the initials "JBF" in its name, whether alone or in combination with any other portion. Dkt. No. 2-2 at 24.

On December 17, 2021, JBF and SGE executed a non-renewal agreement related to the South Broward franchise. Dkt. No. 2-4. The non-renewal agreement stated in part that "[SGE] shall cooperate with [JBF] in transferring all social media accounts, telephone numbers, and other means of customer and consignor communication to [JBF]." *Id.* On October 17, 2022, JBF issued a notice of termination to Brandon Gibson and Samone Gibson related to the Greater Palm Beach franchise. Dkt. No. 2-5. The termination notice requested the Gibsons "make arrangements to transfer to JBF all online and social media pages utilizing the JBF marks (including without limitation the Instagram page for the franchise)" and stated the Gibsons were "prohibited from further use of . . . confidential JBF information and from utilizing the JBF marks." *Id.*

Before December 2022, JBF had administrative access to the social media pages for both South Broward and Greater Palm Beach. Dkt. No. 2 at 28. However, on December 29, 2022,

3

Defendants allegedly removed JBF's administrative access. *Id.* In February 2023, JBF believes Defendants modified the South Broward Facebook page to list Samone Gibson as a contact person, providing an email address of Samone.gibson@gmail.com. *Id.*; Dkt. No. 2-12.

On January 23, 2023, counsel for JBF sent a letter to the Gibsons summarizing the social media provisions of the parties' various agreements and stating that, following the non-renewal of the South Broward franchise along with the termination of the Greater Palm Beach franchise, the Gibsons "are holding [the social media pages] hostage." Dkt. No. 2-6. JBF counsel demanded the Gibsons "immediately transfer all social media pages relating to Just Between Friends back to JBF." *Id.* at 3.

On January 30, 2023, Brandon Gibson sent a response to JBF's counsel stating in relevant part that the Gibsons "will agree to transfer/release all social media associated with Just Between Friends ("JBF"), and will work with the appropriate person at JBF and/or the new territory owner to facilitate the transfer." Dkt. No. 2-8. JBF counsel sent an email to Brandon Gibson at 4:29 p.m. on January 30, 2023 thanking him for his response and cooperation and attaching instructions for the social media transfers. Dkt. No. 2-9.

JBF counsel sent a follow-up email on February 3, 2023, stating that Brandon Gibson "advised in [his] January 30th letter that [the Gibsons] would be transferring the social media pages back to Just Between Friends, but that has not yet occurred." Dkt. No. 2-10 at 2. In a third email, dated February 6, 2023, JBF counsel referred to a telephone conversation with Brandon Gibson and stated she "under[stood] from [the] conversation that, contrary to [his] representations in [the] correspondence of January 30, 2023, [the Gibsons] have determined that [they] will not transfer the social media pages for [their] two previous Just Between Friends franchise locations back to JBF." Dkt. No. 2-11. This suit for injunctive relief followed.

## AUTHORITY AND ANALYSIS

### I. Jurisdiction

A federal court may issue injunctive relief if it has subject matter jurisdiction over the claim and personal jurisdiction over the parties. *See Thomas v. Bolls*, No. 18-CV-00692-GPG, 2018 WL 9489245, at *2 (D. Colo. May 16, 2018).

### A. Subject Matter Jurisdiction

There are two statutory bases for federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331. Federal-question jurisdiction exists for all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235–36 (10th Cir. 2003), 440 F.3d 1227 (10th Cir. 2006) (internal quotation marks and citation omitted). Thus, to find jurisdiction under § 1331, two conditions must be satisfied. First, a question of federal law must appear on the face of the plaintiff's well-pleaded complaint. *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001). Second, the plaintiff's cause of action must either be: (1) created by federal law, or (2) if it is a state-created cause of action, "its resolution must necessarily turn on a substantial question of federal law." *Id.* (citing *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808 (1986)).

Here, JBF brings federal claims for trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, as well as for violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(A). Dkt. No. 2. These satisfy both conditions necessary for the jurisdictional requirements of § 1331. Because the Court has original

jurisdiction over the Lanham Act and DTSA claims, it may exercise supplemental jurisdiction over JBF's state law claim for violation of the Oklahoma Consumer Protection Act. *See Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010) ("Once a district court has jurisdiction, additional claims and parties can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), which grants the district courts jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (internal quotation marks and citation omitted)).

### B. Personal Jurisdiction

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (brackets and internal quotation marks omitted). The minimum contacts may give way to specific or general jurisdiction. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 19 F. App'x 815, 822 (10th Cir. 2001).[2]

JBF states that a substantial part of the events or omissions giving rise to its claims occurred within this District. Dkt. No. 2 at 3. Moreover, the franchise agreements executed by JBF and SGE (through Samone Gibson) each include a dispute resolution clause stating in relevant part:

> [A]ny action requesting injunctive relief related to ownership or use of the Marks . . . will be submitted to a state or federal court in Tulsa, Oklahoma. The Parties expressly agree that such court(s) shall have exclusive jurisdiction over any issues not subject to arbitration. ***You irrevocably submit to the jurisdiction of such courts and waive any***

---

[2] Unpublished appellate decisions are not precedential but may be cited for their persuasive value. *See* 10th Cir. R. 32.1; Fed. R. App. P. 32.1.

> ***objection you may have to either the exclusive jurisdiction or venue of such courts.*** You further irrevocably agree not to argue that Tulsa, Oklahoma is an inconvenient forum or to request transfer of any such action to any court.

Dkt. No. 2-1 at 39 (emphasis added) (South Broward); Dkt. No. 2-2 at 42 (Palm Beach). Samone Gibson and Brandon Gibson each executed an owners' guaranty that binds them to "each and every provision in the [franchise] Agreement," including without limitation its dispute resolution provision. Dkt. No. 2-1 at 48; Dkt. No. 2-3 at 5.[3] This is sufficient for a prima facie showing of personal jurisdiction. *See Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1344 (10th Cir. 1992) (describing "the principle that forum selection clauses are prima facie valid and should be enforced unless shown to be unreasonable" (quotation omitted)).

## II.   Temporary Restraining Order and Preliminary Injunction

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking preliminary injunctive relief through a TRO or a preliminary injunction must show that: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted). The primary goal of preliminary injunctive relief is to preserve the pre-trial status quo. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). In considering a motion for such relief, the Court determines the status quo by looking "to the reality

---

[3] The guaranty in the South Broward franchise agreement appears to have a scrivener's error, as it incorporates "the dispute resolution provisions of Section 17.8 of the Agreement." Dkt. No. 2-1 at 48. However, the dispute resolution provision is Section 17.7 of the franchise agreement. *Id.* at 38-39. The Palm Beach franchise agreement accurately references Section 17.7. Dkt. No. 2-3 at 4.

of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotation marks and citation omitted).

"Preliminary injunctions are typically prohibitory in the sense that they prohibit the defendant from doing something." *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1274–75 (10th Cir. 2022) (internal quotation marks and citation omitted). Injunctions that affirmatively require the nonmoving party to take action before a trial on the merits are considered mandatory. *Id.* Mandatory injunctions are typically disfavored and require the movant to make a heightened showing of the four preliminary injunction factors. *RoDa Drilling Co.*, 552 F.3d at 1209. When the moving party demonstrates that "the exigencies of the case require extraordinary interim relief," the court may grant a mandatory injunction upon satisfaction of the heightened burden. *Id.*

JBF requests both prohibitory and mandatory relief. It first requests the Court prohibit the Gibsons from: using the JBF Marks or any trademark, service mark, logo or trade name that is confusingly similar to any of the JBF Marks; otherwise infringing the JBF Marks or using any similar designation, alone or in combination with any other components; passing off any products or services as those of JBF or JBF authorized franchisees; causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services; causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with JBF and its authorized franchisees or any of JBF's products or services; or unfairly competing with JBF or its authorized franchisees, in any manner. Dkt. No. 2 at 38. It also requests the Court require the Gibsons take affirmative action to transfer two sets of digital information to JBF: first, social media accounts, including Business Manager access, for the South Broward Franchise and

Greater Palm Beach Franchise (specifically Facebook pages, Facebook consignor groups, and Instagram pages); and second, "all Confidential Information as set forth in the Franchise Agreement." *Id.*

### A. Likelihood of Success on the Merits

Injunctive relief can be granted upon a showing of likely success on any particular claim. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) ("To obtain temporary injunctive relief, [the movant] must show a substantial likelihood of success on at least one claim."). The Court focuses first on JBF's Lanham Act claims. If it determines that Plaintiff is likely to succeed on the merits of any of these claims, it need not make a finding on its other claims.

"Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under . . . the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1050 (10th Cir. 2008). To succeed on its Lanham Act claims, JBF must show that it has registration of a mark (for a § 32 claim) or at least a protectable interest in a mark (for a § 43(a) claim); that the Gibsons used an identical or similar mark in commerce; and that the Gibsons' use is likely to confuse consumers. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). "The central question in a typical infringement action under either § 32 or § 43(a) is whether the defendant's use of the plaintiff's mark is likely to cause consumer confusion." *Id.* Here, JBF brings both § 32 and § 43(a) claims. *Compare* Dkt. No. 2 at 32 *with id.* at 35. The Court focuses on the § 32 claim. *See Schiavo*, 403 F.3d at 1232.

JBF has met the first element, that it has registration of a mark. Specifically, it identifies three marks it owns and has registered on the Principal Register of the United States Patent and

Trademark Office: "JUST BETWEEN FRIENDS" with design, Registration No. 2,912,971 dated December 21, 2004; "BETWEEN FRIENDS" without design, Registration No. 3,866,423 dated October 10, 2010; and "JUST BETWEEN FRIENDS" without design, Registration No. 3,866,424 dated October 26, 2010.  Dkt. No. 2 at 6; *see also* Dkt. No. 7.

JBF has met the second element, that the Gibsons have used an identical or similar mark in commerce.  The Gibsons originally used JBF's marks in commerce with permission and authorization under the franchise agreements.  Dkt. No. 2 at 22.  However, the Gibsons did not renew the South Broward franchise agreement and JBF terminated the Palm Beach franchise agreement.  *Id.* at 7-9; Dkt. No. 2-4; Dkt. No. 2-5.  The South Broward non-renewal agreement dated January 5, 2022 states the Gibsons "shall cooperate with [JBF] in transferring all social media accounts . . . and other means of customer and consignor communication to [JBF]."  Dkt. No. 2-4 at 1.  The Palm Beach notice of termination dated October 17, 2022 states the Gibsons "are prohibited from further use of . . . confidential JBF information and from utilizing the JBF marks."  Dkt. No. 2-5 at 1.

On January 30, 2023, Brandon Gibson acknowledged that the Gibsons still had possession of the social media accounts and wrote that the Gibsons "agree[d] to transfer/release all social media associated with [JBF] and will work with the appropriate persons . . . to facilitate the transfer."  Dkt. No. 2-8 at 1.  However, on February 6, 2023, Brandon Gibson informed counsel for JBF orally that the Gibsons "determined that [they] will not transfer the social media pages . . . back to JBF."  Dkt. No. 2-11.  JBF states the Gibsons maintain possession of the social media accounts and pages, have removed JBF's administrative access to the social media, and modified the South Broward Facebook page to list Samone Gibson as a contact person.  Dkt. No. 2 at 25-28; Dkt. No. 2-12.

Finally, JBF has met the third element, that the Gibsons' use of the JBF marks is likely to cause consumer confusion. "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) (collecting cases where courts "held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement"). The Tenth Circuit has indicated similarly, explaining "the relevant confusion under trademark law is not limited to confusion of consumers as to the source of the goods, but also includes confusion as to sponsorship or affiliation, such as a consumer's mistaken belief that a retailer is part of a larger franchising operation." *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 835 (10th Cir. 2005).

The record evidence is sufficient to support each element of JBF's § 32 Lanham Act trademark infringement claim. The Court therefore finds that JBF is likely to succeed on the merits of that claim, and this factor weighs heavily in favor of granting preliminary injunctive relief.

### B. Irreparable Injury

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy*, 912 F.3d at 1270 (internal quotation marks and citation omitted). The plaintiff must therefore demonstrate a "significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Trial Laws. Coll.*, 23 F.4th at 1270–71 (internal quotation marks and citation omitted). "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156

(10th Cir. 2001) (citation omitted). Courts have found that damage awards would be inadequate in a number of circumstances, especially in situations where: (1) the award would be speculative because the damages are not easily quantifiable; and (2) where the injury is of a continuing nature. Charles A. Wright and Arthur R. Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2944 (3d ed., Apr. 2018) (collecting cases).

JBF asserts irreparable injury would occur without injunctive relief because it consistently exercises strict quality control over the use of its marks and the products and services offered under those marks. Dkt. No. 3 at 19. It asserts it is unable to exercise any quality control over the Gibsons' misrepresentations and failures to communicate to the public and that this results in irreparable harm to JBF's names, marks, and associated goodwill. *Id.* The Court concurs. Additionally, Congress recently "amended the Lanham Act to expressly allow a presumption of irreparable injury when the owner of a trademark proves likelihood of success on the merits." *Trial Laws. Coll.*, 23 F.4th at 1270. Indeed, the current law on the books states, "A plaintiff seeking [a Lanham Act] injunction shall be entitled to a rebuttable presumption of irreparable harm upon . . . a finding of likelihood of success on the merits for a violation [of § 32 and/or § 43(a)] in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a). The Court has already found a likelihood of success and the presumption of irreparable harm thus attaches. This factor weighs heavily in favor of granting preliminary injunctive relief.

**C. Balance of Harms**

The plaintiff must show that its threatened injury, absent injunctive relief, outweighs the opposing party's threatened injury under the injunction. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). JBF asserts the Gibsons themselves "have stated that they 'have no intention of hosting another sale' in either franchise territory" and thus "have no use for

and cannot be harmed by the surrender of the [JBF] social media pages except to the extent the pages are being retained by [the Gibsons] with malicious intent." Dkt. No. 3 at 20. The Court agrees. *See Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) (recognizing that "when the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement"). This factor weighs heavily in favor of granting preliminary injunctive relief.

### D. Public Interest

Finally, JBF "must also demonstrate that issuance of the preliminary injunction is not adverse to the public interest." *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 357 (10th Cir. 1986). "Infringement and dilution of trademarks are inherently contrary to the public interest." *Harris Rsch., Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1169 (D. Utah 2007). This factor weighs heavily in favor of granting preliminary injunctive relief.

### E. Heightened Standard for Mandatory Relief

The Court has already found that all four relevant factors weigh heavily in favor of granting preliminary injunctive relief. This meets the heightened showing required for the Court to order affirmative action by the Gibsons. Additionally, JBF must demonstrate that mandatory relief is justified by the exigencies of the case. *RoDa Drilling Co.*, 552 F.3d at 1209. It has done so. JBF states in the Motion that "if either a potential franchise applicant or a potential consumer were to view the South Broward Facebook page and desire to contact JBF, JBF has no control over that contact or how it is handled or responded to since Defendants have listed Defendant Samone Gibson as the contact person for the South Broward Franchise." Dkt. No. 3 at 19. Moreover, "Plaintiff's new JBF franchisee for Greater Palm Beach Florida cannot use the Greater Palm Beach Social Media for marketing, has zero access to the Private Facebook Consignor group, and cannot

13

market her JBF Sales to previous consignors." *Id.* at 10-11. These exigencies justify mandatory relief in the form of a court order requiring the Gibsons to return the relevant digital assets to JBF.

### F. Bond

Where injunctive relief is granted, Rule 65(c) requires that the movant give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Therefore, before the Court grants injunctive relief, it must consider whether a bond is necessary. *See Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (concluding that, where a trial court does not "contemplate the imposition of the bond, its order granting a preliminary injunction is unsupportable"). The Court has "wide discretion under Rule 65(c) in determining whether to require security" and may, therefore, impose no bond requirement. *RoDa Drilling*, 552 F.3d at 1215.

JBF requests the Court determine a bond is unnecessary on two distinct bases: that there is an absence of proof showing a likelihood of harm and that the parties' franchise agreements state that JBF would not be required to post bond. Dkt. No. 3 at 22; Dkt. No. 2-1 at 38; Dkt. No. 2-2 at 42. Based on the record evidence before it, the Court exercises its discretion not to impose a bond at this time. At the preliminary injunction hearing, the Court will take up the issue as to whether a bond requirement should be imposed to the extent that further injunctive relief is granted.

## CONCLUSION

IT IS THEREFORE ORDERED that JBF's motion for temporary restraining order and preliminary injunctive relief [Dkt. No. 3] is GRANTED. Defendants Samone Gibson Enterprises, LLC; Samone Gibson; and Brandon Gibson shall:

14

1. Transfer the below identified social media pages, including the Business Manager to the social media pages, to JBF:

    a. Facebook:  https://www.facebook.com/JBFSouthBroward/

    b. South Broward Facebook Consignor Group

    c. Instagram:  https://www.instagram.com/jbfsouthbroward

    d. Facebook:  https://www.facebook.com/JBFofGPB

    e. Greater Palm Beach Facebook Consignor Group

    f. Instagram:  https://www.instagram.com/jbfpalmbeach/?hl=en

2. Refrain from using the JBF Marks or any trademark, service mark, logo, or trade name that is confusingly similar to any of the JBF Marks.

3. Transfer all Confidential Information as set forth in the franchise agreements to JBF.

4. Refrain from otherwise infringing the JBF Marks or using any similar designation, alone or in combination with any other components.

5. Refrain from passing off any products or services as those of JBF or JBF authorized franchisees.

6. Refrain from causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services.

7. Refrain from causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with JBF and its authorized franchisees or any of JBF's products or services.

8. Refrain from unfairly competing with JBF or its authorized franchises in any manner.

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect for fourteen (14) days unless otherwise dissolved by this Court or extended for good cause. A hearing is set for March 23, 2023 at 1:00 p.m. to hear evidence and argument as to whether the TRO should be converted into a preliminary injunction under applicable law.

IT IS FURTHER ORDERED that JBF shall promptly serve Defendants Samone Gibson Enterprises, LLC; Samone Gibson; and Brandon Gibson with copies of this Order and file certificates of service reflecting the same.

DATED this 14th day of March 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE